## In re CULLEN.

### (District Court, E. D. Pennsylvania. February 11, 1910.)

### No. 3,288.

BANKRUPTCY (§ 345*) — CLAIM TO FUND — JUDGMENT CREDITOR — RELEASE — "OTHER ESTATE."

A judgment creditor expressly released his lien on certain described real estate of his debtor that it might be conveyed to a mortgagee, the debtor having a right to reconveyance on payment of the mortgage debt at any time before the property should be sold by the mortgagee. The release, however, provided that it should not affect the creditors' lien on the other estate of the debtor. *Held*, that on a sale of the property free from liens by the mortgagee and the debtor's trustee in bankruptcy, realizing a sum more than sufficient to pay the mortgage debt, such surplus did not constitute "other estate" within the meaning of the release, and that the judgment creditor had no claim thereto.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*

For other definitions, see Words and Phrases, vol. 6, p. 5080.]

In the matter of Thomas A. Cullen, bankrupt. On review of decision of referee. Affirmed.

Henry A. Hoefler, for Edward Trainer.

John Dolman, for Bergner & Engel Brewing Company.

J. B. McPHERSON, District Judge. The point upon which the decision of this case must turn will appear from the following statement of facts:

In October, 1903, the bankrupt owned 10 houses upon which Edward Trainer held two judgment liens, while a building association held three prior mortgages upon the same property. The bankrupt's indebtedness to the association was evidently not in a satisfactory condition, for a plan of liquidation was made between them on October 6th, which is evidenced by the following resolutions:

"It was moved and seconded that the offer of Thos. A. Cullen be accepted, viz., to transfer to the Ass'n the 10 houses situated at No. 1802 to 1820 So. Bancroft St. inclusive, upon which the Ass'n now has a mortgage. To apply the rents, first deducting repairs and collecting commissions, to the payment of ground rent, taxes, water rents and the dues in the Ass'n on the loan now existing, as well as interest on the amount of money which the Ass'n will advance to pay the taxes now due.

"Mr. Cullen agreeing to pay on demand any deficit between the rents and expense charges due and interest above mentioned. Failure on his part to pay the deficit on demand being a sufficient authority for the Ass'n selling the properties for the best price they will bring.

"The following motion was made and carried:

"That if Mr. Cullen pays the Ass'n debt against the houses above mentioned at any time while they remain in the Ass'n hands, that they be reconveyed over to him. This not to impair the Ass'n right to sell the houses at any

time, if the deficit between receipts and payments referred to in the former motion is not paid on demand."

To aid in carrying out this plan, Trainer released his judgments on October 26th; the important language of the release being a covenant that:

"I will not at any time or times hereafter, sell or dispose of, attach or levy upon, or claim or demand the aforesaid premises, with the appurtenances, or any part thereof, in or by virtue of the aforesaid judgment, or claim any estate therein, so that the said Thomas A. Cullen, his heirs and assigns, shall and may hold the same, free and clear of and from the judgment aforesaid; provided, however, that nothing herein contained shall invalidate the lien or security of the said judgment upon the other estate of the said Thomas A. Cullen."

On December 14th the bankrupt carried out his part of the plan by conveying the houses to the association in pursuance of the foregoing resolutions, and the association continued to administer the property until March 24, 1909. Cullen was adjudged a bankrupt late in 1908, and on March 4, 1909, the referee made an order directing his equity in the houses to be sold free of liens. In order to make an advantageous sale, the association joined the trustee in selling the whole title on March 24th—not only the bankrupt's equity, but also the legal title that had been conveyed in December, 1903,—and, after the association's claim had been paid in full out of the proceeds of sale, a fund remained which belonged to the bankrupt's equity. To this fund two claimants appeared, Trainer and the Bergner & Engel Brewing Company. It would needlessly increase the difficulty of understanding the question for decision if the facts concerning these claims should be stated in detail. It is enough to say that if the equity of the bankrupt in the property was part of his "other estate"—within the meaning of that phrase in the proviso of Trainer's release—Trainer should receive the fund in dispute; otherwise, the claim of the brewing company is superior in right.

The referee (Theodore M. Etting, Esq.) decided against Trainer's contention, and I shall add only a few words to explain why I agree with his ruling. In my opinion the bankrupt's equity in the houses cannot be properly described as "other estate of the said Thomas A. Cullen"; that is, as something else than the very property in which it is an equitable interest or an equitable estate. Trainer gave up all right of every kind which he could claim in or out of these specific houses by virtue of his judgments, so that the property might be free and clear from the grasp of these liens; but he expressly retained the lien and security of the judgments against "other estate" of his debtor. As I understand the release, it must mean at least this: "I abandon my claim upon whatever estate or interest Cullen now has in these houses; but I retain my rights against any other estate that he may now possess, or may come to possess hereafter." If, therefore, Cullen's equity under his arrangement with the association was an estate that existed when the release was executed, Trainer expressly gave up all claim upon it for "any time or times hereafter," and has no right to the fund now in hand, which merely stands in its place. To my mind the question seems to be free from difficulty. Cullen did not convey his whole

estate, equitable as well as legal, to the association. He continued to hold a certain undefined but real interest, and this never passed out of his ownership. It is this that was sold on March 24th, and upon this, or its proceeds, Trainer by an instrument under seal had released any claim whatever under his judgments.

The decision of the referee is affirmed.